IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 24-cr-330-BAH-02 |
| | : | |
| ERIC OLIVER, | : | |
|     Defendant. | : | |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Eric Oliver. There can be no dispute that the Court has a duty to deliver a sentence which is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Oliver requests the Court to impose a sentence of twelve (12) of months unsupervised probation coupled with community service hours, considering:

    (1)    His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building;

    (2)    His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity; and

    (3)    To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Such a sentence is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).

## I.    **CASE BACKGROUND**

Mr. Oliver was arrested on June 3, 2024, in the Eastern District of Virginia (Richmond) based on a Complaint [1] filed in U.S. District Court for the District of Columbia. He was charged, with four (4) misdemeanor offenses related to his conduct in and around the U.S. Capitol building on January 6, 2021.[1] The Eastern District of Virginia (Richmond) released him on personal recognizance with conditions.

On June 18, 2023, he was presented (VTC) in the U.S. District Court for the District of Columbia. He was released by U.S. Magistrate Judge Robin M. Meriweather on personal recognizance with standard conditions. [21]

On July 17, 2024 an Information [25] was filed, charging the same four misdemeanor offenses as stated in the Complaint.[1]

On October 4, 2024, Mr. Oliver appeared before U.S. District Judge Beryl A. Howell. The Court accepted a voluntary guilty plea as to Counts 3 & 4 of the Information: Parading, Demonstrating or Picketing in a Capitol Building). Each particular statute carries a possible penalty of up to six (6) months imprisonment, five (5) years of probation and a fine of up to $5,000.00. As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement, [47]

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

Mr. Oliver has agreed to $500.00 restitution and a $10.00 (per count of conviction) special assessment.

It is counsel's understanding Mr. Oliver is in compliance with all of his conditions of release. Sentencing is scheduled for January 24, 2025, at 10:00 a.m.

## II.      <u>LEGAL STANDARD</u>

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or othis correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
> (3) the kinds of sentences available;
> (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;
> (5)) any relevant "policy statements" promulgated by the Commission;
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**A.    Nature and Circumstances Of The Offense**

On the morning of January 6, 2021, Mr. Oliver drove from his home in Glen Allen, Virginia, to Washington, D.C., along with his co-defendants Brandon Pettit and David Mullsteff. This was his first visit to Washington, D.C. They went to the "Stop the Steal" rally on the Ellipse. Thereafter, Mr. Oliver walked to the U.S. Capitol area where he (and Messrs. Pettit and Multsteff) approached the U.S. Capitol building from the west side. At approximately 3:21 p.m. he went inside through the Senate Wing Door and exited by the same door approximately five minutes later. While inside the building he took pictures and he recorded videos on his cell-phone. On January 7, 2024 he made a few non-violent and non-threatening comments about his experience being at the events on January 6th. The Statement of Offense [48] confirms this conduct.

After watching video clips of January 6th after-the-fact, he regrets he was any part of it of the events. Mr. Oliver did not see or join with the violent protesters who assaulted police officers and caused property damage to the U.S. Capitol building or grounds.

Mr. Oliver was not part of a group which either organized activities on January 6th, nor does he subscribe to any far-right political views. He had no idea where he was while he was briefly in the Capitol building and to this day he could not navigate inside the building.

In the Statement of Offense [48] it is agreed that Mr. Oliver committed no violent acts and he did not destroy or damage any property. His actions within the

U.S. Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property, commit violent acts, or encourage others to do so. Furthermore, Mr. Oliver did not exercise managerial authority over any other participants. Thus, he was average or minor participant whose conduct was not essential to the advancement of the offense. He merely went inside for a very short period of time (5 minutes) with his co-defendants.

As noted herein, the defense is not aware of any evidence that his entry into the U.S. Capitol building was preplanned or coordinated with any extremist or organized group. Mr. Oliver did not incite others to commit acts of violence or destruction. He did not engage in any violence or questionable conduct towards law enforcement. He did not destroy or steal any property from the U.S. Capitol building. Fifth, based on the Government's own investigation, he remained in a limited part of the building for approximately 5 minutes in total. And the defense is not aware of any evidence suggesting Mr. Oliver entered into the Senate or House Chambers, or any other private areas.

### Post-January 6, 2021

To his credit, Mr.  Oliver has fully acknowledged his misconduct. He pled guilty at a pre-trial stage in the proceedings, thus saving valuable judicial resources as well as the resources of the U.S. Attorney's Office.

It is noted "During the pre-sentence interview, the defendant agreed with the conduct described as presented to the Court prior to his guilty plea."

*See* PSR [71] ¶ 24.

Mr. Oliver has endured life-long damage to his reputation. He reports he has been the subject of a number of media accounts lumping his with others who were there (at/in the U.S. Capitol) on January 6, 2021. None of this will be erased from the internet – it may be there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with his life and the consequences of his actions stemming from January 6th.

### B.    History and Personal Characteristics of Mr. Oliver

Mr. Oliver (age 44) was born in Richmond, VA. His mother is alive and working in Henrico County, VA. His parents divorced when he was a teenager and his father passed away at age 65. Mr. Oliver has a brother (age 51) and a sister (age 49). He enjoys a close relationship with his sister, since they were children.

Mr. Oliver is presently in an 8 year committed relationship (engaged) with whom they have 3 young children. He has a child (age 14) from a previous marriage. (Divorced in 2016) He owns his own home in Glenn Allen, VA. He is currently in good health, but he has a documented history of alcohol and substance abuse. He also reports has used marijuana, cocaine and experimented with heroin.

While he was incarcerated (2010-2013) for Virginia State conviction for Driving While Under the Influence of Alcohol he participated in the Health & Recovery Plan (HARP) and in RISE. He also participated in post-release community alcohol counseling programs. He reports being sober since December, 2014.

Mr. Oliver obtained his GED in 2002. He is currently employed full-time as a sales manager with JES Foundation Repair in Ashland, VA. Previously, he operated

his own construction company and he was also employed at B Drive Foundation Repair Company.

Although he has retained counsel, any extraordinary fine imposed by the Court will be a heavy financial burden on his.

Also, as noted herein and in the PSR, (¶ 39) the United States Sentencing Guidelines do not apply in this case as his conviction are for Class B Misdemeanors.

Attached to this memorandum are two letters in support of Mr. Oliver; from his mother Joanna Oliver and from his grandmother, Patricia C. Turner. These letters provide the Court with a unique perspective about Mr. Oliver. Overall, he is well respected as a father, family member, friend and he is a hardworking person.

All of the above personal factors, as well as his law abiding life and his post arrest behavior, demonstrate he is capable of being a productive citizen which the Court can rely on as a basis to sentence his to a short term of unsupervised probation when it considers the §3553 factors.

**C.      General Deterrence – 18 U.S.C. § 3553(a)(2)(B) –**
        **To Adequately Deter Othiss From Criminal Conduct**

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, thise appears to be no need for incapacitation, specific deterrence or rehabilitation. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the U.S. Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a

sentence that leaves a family impoverished when othis reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

### D.    Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) – To Protect the Public From Furthis Crimes Of The Defendant

Mr. Oliver's likelihood of recidivism is very low. She has expressed genuine remorse and contrition, has cooperated fully with law enforcement and he accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three

National Academy of Science panels... reached that conclusion, as has every major survey of evidence." *Id.*; See *also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates...were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Mr. Oliver age (38), and othis issues consistent with what is mentioned above, the likelihood of Mr. Oliver ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his background and history, as well as his sincere and complete remorse, his early and consistent acceptance of responsibility and the lack of a need to further deter his.[2]

## IV.    The Need To Avoid Unwarranted Sentence Disparities Pursuant to 18 U.S.C. § 3553(a)(6)

Mr. Oliver urges this Court to readily contrast his behavior from the egregious conduct of other January 6th defendants. Compared to many other misdemeanor cases which have been filed in this Court, Mr. Oliver's conduct is among the most peaceful and non-threatening.

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. In the matter of co-defendant Brandon Pettit, this Court on November 1, 2024, imposed a sentence of 24 months probation, (with conditions[3] ) a fine of $5,000.00 and a special assessment of $20.00. The (January 6th) conduct of Mr. Pettit's conduct is essentially the same as the (January 6th) conduct for Mr. Oliver.

---

[2]

 For those in a Criminal History Category I, the recidivism rate is 15.2%. For those who have been employed, the rate is 12.7%. For those with no history of illicit drug use, the recidivism rate is half those who have a drug history. *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 29 (May 2004).

[3] Conditions include 30 days of home detention with location monitoring, may go to work, education, religious services, medical / substance abuse / mental health treatment, attorney visits, court appearances, and other activities approved in advance by the US Probation Office),

Furthermore, Judges of this district court have sentenced many January 6th misdemeanor cases to probation or home detention or just a fine. Counsel has surveyed a Department of Justice ("DOJ") table that documents sentences for Capitol breach defendants.[4] As of December 23, 2024, sixty-nine defendants have been convicted of the same combination of one count of 40 U.S.C. § 5104(e)(2)(D) and one count of 40 U.S.C. § 5104(e)(2)(G). That list is:

1. Lilith Saer, 1:22-CR-00374-DLF, 36 months' probation 200 hours community service $500 restitution.

2. Christian Peter Tyner, 1:23-CR-00361-RDM, 36 months' probation $500 restitution.

3. Brandon Cavanaugh, 1:23-CR-00040-TNM, 14 days home detention 24 months' supervised release $500 restitution.

4. Paul E. Lovley, 1:23-CR-00019-TJK, 14 days' incarceration 36 months' probation $500 restitution.

5. Raul Jarrin, 1:22-CR-00153-RCL, 30 days' incarceration, 36 months' supervised release 60 hours' community service $500 restitution.

6. Victor Martinez, 1:23-CR-00039-TSC, 14 days' incarceration 36 months' supervised release 60 hours community service $500 restitution.

7. Cameron Campanella, 1:23-CR-00231-ACR, 12 months' probation $500 restitution.

8. Christian David Tyner, 1:23-CR-00361-RDM, 36 months' probation $1000 fine $500 restitution.

9. Mai Le Nhi Ngoc, 1:23-CR-00317-TSC, 10 days' incarceration $1000 fine $500 restitution.

---

[4] The routinely updated table is available here: https://www.justice.gov/usao-dc/capitol-breach-cases To reveal that table, click on the box "See sentences handed down in Capitol Breach cases."

10.    Frederic Fiol, 1:23-CR-00196-RCL, 45 days' incarceration 24 months' probation $500 restitution.

11.    Thomas Pooler 1:24-CR-00075-TNM, 12 months' probation $500 restitution.

12.    Angel Villanueva, 1:24-CR-00016-TNM, 4 months' incarceration 24 months' probation $500 restitution.

13.    Nicholas Von Keudell, 1:23-CR-00221-CRC, 24 months' probation 100 hours community service $500 restitution.

14.    Cody Lee Tippett, 1:23-CR-00337-CRC, 30 days' incarceration 36 months' probation $500 restitution.

15.    Donald Pearston, 1:23-CR-00454-JEB, 10 days' incarceration 9 months' probation $1000 fine $500 restitution.

16.    Steven Hanna, 1:23-CR-00272-TJK, 45 days' home detention 24 months' probation $500 fine $500 restitution.

17.    Robert Hanna, 1:23-CR-00272-TJK, 45 days' home detention 24 months' probation $500 fine $500 restitution.

18.    David Evan Smither, 1:24-CR-00015-JMC, 12 months' probation 50 hours' community service $725 fine $500 restitution.

19.    Steven Barber, 1:23-CR-00409-DLF, 24 months' probation 60 hours' community service $500 restitution.

20.    Esvetlana Cramer, 1:23-CR-00414-DLF, 24 months' probation 60 hours community service $500 restitution.

21.    Sarah Kathleen Holmes, 1:24-CR-00090-TNM, 12 months' probation $1000 fine $500 restitution.

22.    Stephen Ondulieh, 1:23-CR-00242-APM, 45 days' home detention 36 months' probation 60 hours' community service $1000 fine $500 restitution.

23.    Jason Curl, 1:23-CR-00253-JDB, 24 months' probation 50 hours' community service $1000 fine $500 restitution.

24.    Scott Alan O'Brien, 1:24-CR-00206-TNM, 24 months' probation 60 hours community service $1000 fine $500 restitution.

25.    Kymberly Sylvester, 1:24-CR-00102-JEB, 12 months' probation $500 restitution.

26.    Daniel Valdez, 1:24-CR-00086-DLF, 36 months probation, $500 restitution.

27.    Robert Costello, 1:24-CR-00059-JMC, 12 months probation, $500 restitution.

28.    Ulises Wilkinson, 1:23-CR-00283-JMC, 12 months probation, $500 restitution, 40 hours community service.

29.    Miles Adkins, 1:24-CR-00273-TNM, 12 days intermittent confinement, 24 months probation, $500 restitution, $1,000 fine.

30.    Tonya Bishop, 1:23-CR-00416-TJK, 24 months probation, $500 restitution, 80 hours community service.

31.    Timothy Tedesco, 1:24-CR-00128-BAH, 36 months probation, 90 days home detention, $500 restitution, $10,000.00 fine.

32.    Derek Dodder, 1:24-CR-00074-CJN, 14 days incarceration, 36 months probation, $500 restitution, $10,000.00 fine.

33.    Marissa Bowling, 1:23-CR-00425-APM, 24 months probation.

34.    Dylan Bowling, 1:23-CR-00425-APM, 24 months probation. 30 days home detention.

35.    Joshua Parmeter, 1:23-CR-00404-JEB, 5 days incarceration, 12 months supervised release, 100 hours community service, $500 restitution.

36.    Curtis Pulaski, 1:24-CR-00103-TJK, 24 months probation, $500 restitution, 30 days home detention, 60 hours community service.

37.    Christopher Keniley, 1:24-CR-00001- TSC, 10 days incarceration, 12 months probation, $500 restitution.

38.    Michael Fournier, 1:24-CR-00081-JEB, 1 month incarceration, 12 months supervised release, $500 restitution.

39.    Benjamin Heffelinger, 1:24-CR-00051-RC 24 months probation, $500 restitution, 2 months home detention

40.     Amanda Mongelli, 1:23-CR-00390-DLF, 24 months probation, $500 restitution.

41.     Valerie Rushing, 1:23-CR-00390-DLF, 24 months probation, $500 restitution.

42.     Zylas Hamilton, 1:24-CR-00153-RDM , 24 months probation, $500 restitution. $100 fine.

43.     David Brian Howard, Amanda Mongelli, 1:24-CR-00047-APM, 24 months probation, 30 days home detention, 60 hours community service, $500 restitution, 60 hours community service

44.     Christopher Gutierrez, 1:24-CR-00184-LLA, 36 months probation, 60 days home detention, $1,500 fine, $500 restitution.

45.     Robert Dowell, 1:23-CR-00335-TNM, 12 months probation, $1,000 fine, $500 restitution.

46      Leah Green, 1:24-CR-00160-TSC, 7 days incarceration, 36 months probation. $500 restitution.

47.     Giorgi Mamulashvili, 1:24-CR-00165-JMC, 12 months probation, 60 days community service, $500 restitution.

48.     Johnny A. Debridge, III, 1:24-CR-00148-CJN, 24 months probation, $500 fine, $500 restitution.

49.     Johnny A. Debridge, Jr., 1:24-CR-00148-CJN, 24 months probation, $500 fine, $500 restitution.

50.     Joshua Borum, 1:24-CR-00301-TNM, 24 months probation, $2,000 fine, $500 restitution, 100 hours community service.

51      Payton Valdez, 1:24-CR-00137-DLF, 60 days incarceration, 36 months probation, $500 restitution.

52.     Joseph Kerry Hicks, 1:23-CR-00399-JMC, 24 months probation, 100 hours community service.

53.     Kelly Lynne Fontaine, 1:24-CR-00072-RBW, 21 days incarceration, 36 months probation, $1,000 fine, $500 restitution.

54.     Brian Dula, 1:24-CR-00072-RBW, 36 months probation, $1,000 fine, $500 restitution.

55. Joseph Julius Lapoint, 1:24-CR-00241-JEB, 19 days incarceration, 12 months probation, 80 hours community service, $500 restitution.

56. Paul Caloia, 1:24-CR-00004-RDM, 24 months probation, 60 days home confinement, 60 hours community servce, $500 restitution.

57. Cameron Clapp, 1:24-CR-00207-JEB, 12 months probation, $1,000 fine, $500 restitution, 100 hours community service.

58. Randolp Milliner, 1:24-CR-00236-ACR, 24 months probation, $500 fine, $500 restitution, 200 hours community service.

59. Sandra Lee Hodges,1:24-CR-00152-CKK, 10 days incarceration, 36 months probation, $500 restitution, 60 hours community service.

60. David Micahel Bates, 1:24-CR-00008-RC, 36 months probation, $500 restitution.

61. Jack Chambers, 1:24-CR-00313-JDB, 30 months supervised release, $500 fine, $500 restitution, 50 hours community service.

62. John Matthew Dine, 1:24-CR-00259 -JMC, 12 months probation, $1,000 fine, $500 restitution.

63. William Irvin Fuller, 1:24-CR-00285-BAH, 60 days home confinement $500 restitution.

64. Jaimee Avery, 1:24-CR-00079-CRC, 18 months probation, $500 restitution.

65. Daniel Avery, 1:24-CR-00079-CRC, 14 days incarceration, 18 months probation, $500 restitution.

66. Natalie Beyeler, 1:24-CR-00100-ACR, 48 months probation, 100 community service hours, $500 restitution.

67. Thomas Blackwood, 1:24-CR-00303-ACR, 48 months probation, 100 community service hours, $500 restitution.

68. Daryl Graham, 1:24-CR-00366-JEB, 24 months probation, $1,500 fine, $500 restitution.

67.   Randy Verdun, Sr., 1:24-CR-00319-GMH, 4 months incarceration, 2 months home detention, 12 months supervised release, $4,000 fine, $500 restitution.

68.   Robert Coppptelli, 1:24-CR-00181-JEB, 9 months probation, $500 restitution, 120 hours community service.

69.   Robin Gabriel, 1:24-CR-00346-TJK, 18 months probation, $500 restitution, 60 hours community service.

The facts of most these defendants who were sentenced to probation are characterized by peacefully walking into and out of the Capitol building over a short duration, *just like* Mr. Oliver. *See United States v. Saer*, 1:22-CR-00374-DLF, ECF 24 ("The defendant entered the Capitol building through the Senate Wing Door at approximately 2:56 pm. She then walked south and walked through the Crypt and the Hall of Columns. She exited the building through the South Door at approximately 3:02 pm."); *United States v. Tyner*, 1:23-CR-00361-RDM, ECF 36 (defendant "entered the Capitol through the East Rotunda Door" at approximately 3:02PM and "began exiting the Rotunda at approximately 3:09PM."); United States v. Campanella, 1:23-CR-00231-ACR, ECF 28 ("The defendant walked to the Capitol and, at approximately 3:00 pm, he entered through the door commonly known as the Senate Wing Door. After entering he began walking south towards the Crypt. Before entering the Crypt, the defendant returned to the Senate Wing Door and exited through the Senate Wing Door at approximately 3:01 pm.").

The facts of the defendants who were sentenced to home detention are characterized by marching through the Capitol building carrying flags, recording the contents of desks, and spouting vitriolic rhetoric, *unlike* Mr. Oliver. *See United States v. Cavanaugh*, 1:23-CR-00040-TNM, ECF 25 at 3-4 (defendant entered the

Capitol building carrying a flag, video recorded the contents of a security desk, and exited 13 minutes later); *United States v. Hanna*, 1:23-CR-00272-TJK, ECF 30 at 3 (defendant entered the Capitol building, was stopped by police officers, and exited 14 minutes later); *United States v. Ondulieh*, 1:23-CR-00242-APM, ECF28 at 3-4 (defendant shared on social media "we took the capitol BACK from the communist scum that is the Democrats…. We did go into the democrats offices. It is after all the PEOPLES HOUSE, and they are enemies of the people. And deserve to die a traitors death.").

The facts of the defendants who were sentenced to incarceration are characterized by making physical contact with police officers, *unlike* Mr. Oliver. *See United States v. Lovley*, 1:23-CR-00019-TJK, ECF 30 at 3-5 (defendant pushed past police officers, entered the Speaker of the House's office and the Senate Chamber, and used a metal barricade to obstruct a police officer); *United States v. Martinez*, 1:23-CR-00039-TSC, ECF 18 at 3-5 (defendant was part of the original group that forced open the Rotunda doors and physically overran the police officers stationed there); *United States v. Villanueva*, 1:24-CR-00016-TNM, ECF 13 at 5-6 (defendant marched through the Capitol with a flagpole and once outside "ran in to join the crowd of rioters engaged in the confrontation with police officers" trying to clear an area of the Capitol); *United States v. Pearston*, 1:23-CR-00454-JEB, ECF 22 at 3-4 (defendant entered and exited the Capitol building two times, and on the second time "faced the officers and made physical motions in the direction of officers until he and others were cleared from the area").

None of this is to suggest that any of these examples, for a conviction of 40 U.S.C. § 5104 (e)(2)(D) & (e)(2)(G), should have received a sentence of incarceration / home detention, but only to suggest there is nothing materially different about Mr. Oliver or his conduct which would justify a sentence of incarceration / home detention.

As noted herein, Mr. Oliver was far more cooperative with law enforcement, did not attempt to hide any evidence, did not participate in questionable or violent conduct, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Oliver's conduct on January 6, 2021, as well as his personal characteristics.

Comparing the facts of Mr. Oliver's case with the facts of these twenty-five defendants' cases, a sentence consisting of primarily probation most avoids unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6).

## CONCLUSION

Mr. Oliver respectfully asks the Court to impose a short term of unsupervised probation of twelve (12) months with community service hours largely because:

(1) His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building, (2) His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity,

and, (3) To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

In the alternative, Mr. Oliver asks that the Court consider a short non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a period of incarceration warranted, Mr. Oliver, asks that he be allowed to serve it on weekends, which is what this Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH).[5]

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. He will, of course, remit the agreed upon $500.00 restitution and the $20.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, Eric Oliver respectfully asks this Court to fashion a sentence of unsupervised twelve (12) months probation, with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, which will consider his as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States,*

---

[5]

Furthermore, this is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. It is counsel's understanding that the monthly cost of imprisonment is $4,417.00, $3,266.00 for community confinement, and $366.00 monthly for supervision. (See PSR [71] ¶ 99)

551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct.

2053 (1996).

Respectfully submitted,

_____
Allen H. Orenberg, Bar No. 395519
The Orenberg Law Firm, LLC
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Tel. No. 301-807-3847
Fax No. 301-807-2829
aorenberg@orenberglaw.com
Counsel for Eric Oliver

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certified that this Memorandum in Aid of Sentencing was filed using the CM/ECF system, by providing notice of service to all case registered parties this 10th day of January, 2025.


_____

Allen H. Orenberg